### JOHN PATRICK RYAN v. HAROLD W. GRIFFIN AND OTHERS.[1]

January 22, 1954.

No. 36,128.

---

[1]Reported in 62 N. W. (2d) 504.

*John Patrick Ryan,* for appellant.

*Meier, Kennedy & Quinn,* for respondent Griffin.

*McGuigan & McGuigan,* for respondents Engel and Schuchland.

DELL, CHIEF JUSTICE.

This is an appeal from an order of the municipal court of St. Paul denying plaintiff's motion for a new trial.

On August 13, 1951, at approximately eight o'clock in the morning, defendant Harold W. Griffin was driving his automobile in an easterly direction on Kellogg boulevard in St. Paul. Following him was an automobile driven by the defendant Ray E. Engel. To the rear of the Engel automobile was one owned and driven by the plaintiff, John Ryan. Ahead of the Griffin automobile and to the rear of the Ryan automobile were a number of automobiles all traveling in an easterly direction on the boulevard forming a continuous procession. The traffic was heavy, the pavement was wet, and a light rain was falling. The boulevard passes through a viaduct known as the Kellogg underpass, and a short distance beyond the east end of the viaduct it merges with traffic from another street in "Y" fashion. Vehicles traveling east on the boulevard through the viaduct encounter a steep incline and curve. Near the east end of the viaduct a collision occurred between the three automobiles, the front end of the Engel car colliding with the rear end of the Griffin car and the front end of the Ryan car colliding with the rear end of the Engel car. The automobile driven by the defendant Engel was owned by the defendant Arlan G. Schuchland and was being driven under circumstances which would render Schuchland liable to the plaintiff if liability attached to Engel.

As a result of the collision plaintiff instituted this action against all of the defendants to recover for personal injuries and damage to his automobile allegedly sustained as a result of their negligence. At the close of plaintiff's case, upon separate motions of the defendants, the action was dismissed as to the defendant Griffin and there was a directed verdict in favor of the defendants Engel and Schuchland, the court ruling that the plaintiff was not entitled to recover as a matter of law because of his contributory negligence.

The appeal raises four questions: (1) Was there evidence sufficient to create a jury issue as to the negligence of the defendants Griffin and Engel or either of them? (2) Did the evidence establish

plaintiff's contributory negligence as a matter of law? (3) Where plaintiff fails, upon the trial, to note an exception to an order dismissing the action as to one defendant and an order directing a verdict in favor of the other defendants and the motion for a new trial is based upon errors of law occurring at the trial without specifying the errors in the motion, can this court review the orders of dismissal and the directed verdict upon appeal? (4) Were defendants called for cross-examination under the statute, and if not, what consideration is to be given to their testimony?

■ Even though the trial court gave as its sole reason, in dismissing the action as to Griffin and in directing the verdict in favor of Engel and Schuchland, that the plaintiff was guilty of contributory negligence as a matter of law barring recovery; nevertheless, under the issues raised on this appeal and the decision which we have reached, the order of the court must be affirmed if, upon an examination of the record, the evidence is insufficient to sustain a finding of negligence as to the defendants or any of them. Mix v. City of Minneapolis, 219 Minn. 389, 394, 18 N. W. (2d) 130, 133.

Whether the evidence was sufficient to create an issue of negligence for the jury requires an application of well-established principles of law. The statutes principally involved are M. S. A. 169.14, subds. 1 and 3; 169.19, subds. 6 and 7. There are reciprocal duties on the part of the driver of a leading automobile and the driver of the car following. Each must exercise due care, must keep his vehicle under reasonable control, must drive at a speed which is reasonable and proper under the circumstances, must give due regard to the rights of the other, and in general must so operate his automobile as to avoid unnecessary collision with the other. The driver of a leading automobile has no absolute legal right superior to the driver of the car following. The leading driver must exercise due care not to swerve, slow up, or stop without adequate warning of his intention to do so to the driver of the car following. The driver of the car following must exercise due care to avoid collision with the leading automobile. Just how close an automobile may be followed and what precautions a driver must take in the exercise of due care to avoid

colliding with the automobile ahead and just what warnings the driver of the leading automobile must give in the exercise of due care before swerving, slowing up, or stopping cannot be stated in a fixed rule. In each case, except where reasonable minds may not differ, what due care requires and whether it has been exercised is for the jury.[2]

There was evidence from which the jury could find that, while the automobiles in front of the defendant Griffin's automobile were continuing down the highway in procession and at a time when the automobiles involved here were approximately a car length or a little farther apart, the defendant Griffin, for no reason, suddenly, without warning, and with knowledge that the Engel automobile was following his automobile closely, either abruptly slowed down or abruptly stopped his automobile in the regular lane of traffic, thus causing the Engel automobile to collide with his car from the rear. There was also evidence which would permit the jury to find that the defendant Griffin, because of his failure to keep a careful and watchful lookout, permitted his automobile to approach too closely to the automobile ahead of him, thus requiring him to abruptly slow down or abruptly stop, thereby causing the automobile of the defendant Engel to collide with his.

On the other hand, there was evidence from which the jury could find that defendant Griffin to start with was following the automobiles preceding him on the boulevard at a speed of approximately 15 miles an hour; that he gradually slowed his automobile down to 5 miles an hour on the incline without the application of his brakes; that the reason for his so reducing his speed was a similar decrease in the speed of the automobiles preceding him on the highway; and that, while Griffin was traveling at this reduced speed of 5 miles an hour, the defendant Engel, without reducing his speed from approximately 15 miles an hour at which he had been traveling, collided

[2]Cardell v. Tennessee Elec. Power Co. (5 Cir.) 79 F. (2d) 934; Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945; Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758; Landeen v. DeJung, 219 Minn. 287, 17 N. W. (2d) 648; Peterson v. Minneapolis St. Ry. Co. 226 Minn. 27, 31 N. W. (2d) 905.

with the automobile of the defendant Griffin because of the defendant Engel's failure to keep a careful and watchful lookout. There was also evidence from which the jury could find that the drivers of both automobiles failed to perform their reciprocal duties to each other. Under the evidence it could be found that, because of the negligence of either one or the other or both of the defendant drivers, their automobiles collided and that as a result plaintiff's automobile collided with the rear of the defendant Engel's automobile. A jury issue was therefore presented as to both defendants.

Defendant Engel cites the case of Benson v. Hoenig, 228 Minn. 412, 37 N. W. (2d) 422. That case is distinguishable from the fact situation here. There a funeral procession was involved. Under M. S. A. 169.20, subd. 6, such procession acquires the right of way by identifying itself and "keeping all cars in close formation." The facts there were not in dispute. The accident happened in the country. Hoenig, the funeral director in charge of the procession, was in the lead. He was setting the pace; reliance was rightfully placed upon him to do so. There was no intention to stop until St. Mathias Church, located about 12 miles southwest of Brainerd, was reached. Hoenig intended to turn right at the Corey road but through inadvertence failed to do so. When he realized his mistake, he applied his brakes and came to an abrupt stop. By abruptly stopping he set in motion a sequence of events which brought about the accident. There defendant Gaboury, who was driving the fourth from the last car in the procession, upon observing the preceding car slow down, applied her brakes and came to a gradual stop about four or five feet behind the car in front of her. When she applied her brakes, the rear lamps of her automobile signaled her intention to stop to the car behind. She did nothing in stopping her car other than what was done by those cars preceding her. After she came to a stop, she was struck from behind by the car following her. We held that there was no issue of negligence for the jury as to Mrs. Gaboury, and the jury's finding that Hoenig was negligent was sustained.

■ We consider the question of contributory negligence under the guidance of fundamental rules which prescribe the function of

the court and jury. A motion for a directed verdict on the ground of contributory negligence as a matter of law raises a question of law only and admits, for the purpose of the motion, the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence, and the view of the evidence most favorable to the adversary must be accepted.[3] It is only in the clearest of cases, where the facts are undisputed and it is plain that all reasonable men can draw but one conclusion from them, that the question of contributory negligence becomes one of law for the court.[4] If the facts are not in dispute but different minds may reasonably arrive at different conclusions in applying the legal criteria as to due care of the parties, the issue is for the jury, not the court.[5] Estimates of speed, distance, and time involve varying factors and are always subject to human error. Courts should be especially cautious in holding contributory negligence a question of law based upon such estimates. Where such estimates are made by the occupants of moving automobiles, even when danger is not imminent, such estimates are not in themselves to be regarded as conclusive.[6] Courts should be reluctant to set up arbitrary standards

[3]Mix v. City of Minneapolis, 219 Minn. 389, 392, 18 N. W. (2d) 130, 132; Manos v. St. Paul City Ry. Co. 173 Minn. 402, 217 N. W. 377; Reiton v. St. Paul City Ry. Co. 206 Minn. 216, 288 N. W. 155; Merchants & F. Mut. Cas. Co. v. St. Paul-Mercury Ind. Co. 214 Minn. 544, 8 N. W. (2d) 827; Stauff v. Bingenheimer, 94 Minn. 309, 102 N. W. 694; Knudson v. G. N. Ry. Co. 114 Minn. 244, 130 N. W. 994; 6 Dunnell, Dig. & Supp. § 9764.

[4]Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758; Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945; Northern Liquid Gas Co. v. Hildreth (8 Cir.) 180 F. (2d) 330; 4 Dunnell, Dig. & Supp. § 7033.

[5]Schrader v. Kriesel, 232 Minn. 238, 45 N. W. (2d) 395; Landeen v. DeJung, 219 Minn. 287, 17 N. W. (2d) 648; Nees v. Minneapolis St. Ry. Co. 218 Minn. 532, 16 N. W. (2d) 758; Travis v. Collett, 218 Minn. 592, 17 N. W. (2d) 68.

[6]Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327; Webber v. Seymour, 236 Minn. 10, 51 N. W. (2d) 825; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; 4 Dunnell, Dig. & Supp. § 7033.

of behavior amounting in effect to rules of law to be applied in all cases without regard to the surrounding circumstances in each case.[7] Courts do not sit as a "super-jury" and their sense of self-restraint should keep them from deciding a question of contributory negligence as one of law except in very clear cases where the evidence is susceptible of only one reasonable inference.[8]

Here plaintiff testified that when he entered Kellogg boulevard from Exchange street he did so at a speed of from 15 to 20 miles an hour. He became a part of the procession of automobiles traveling east on the boulevard and was conscious that there was a string of cars preceding him. He was watching the Engel car ahead and remained approximately 20 feet or a car length behind it. This was about the distance between automobiles which the evidence shows other cars in the procession maintained. He further testified that, without slowing down or giving any warning of any kind, the Engel car suddenly came to an abrupt stop when it "rammed" into the rear end of the Griffin car. Plaintiff immediately applied his brakes but because of the emergency was unable to stop and collided with the rear end of the Engel automobile.

In cross-examination defendants were successful, as is frequently the case, in developing inconsistencies in plaintiff's direct testimony as to the speed at which he was traveling, the distance which he maintained between his automobile and the Engel car, the kind of lookout which he was keeping, and other matters unnecessary to detail here. However, on a motion by defendant for a dismissal or directed verdict, the credibility of the evidence and every inference which may be fairly drawn therefrom must be viewed in the light most favorable to the plaintiff. It is not for the trial court to accept a part of the testimony of a witness and reject the remainder. That is the province of the jury, the jury being the exclusive judges of the evidence and the credibility of the witnesses. Tested under the rules above stated the issue of plaintiff's contribu-

---

[7]Northern Liquid Gas Co. v. Hildreth (8 Cir.) 180 F. (2d) 330; Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

[8]Anderson v. Kelly, 196 Minn. 578, 265 N. W. 821; Nees v. Minneapolis St. Ry. Co. *supra;* 4 Dunnell, Dig. & Supp. § 7033.

tory negligence was for the jury, and it was error to dismiss the action as to Griffin and to direct a verdict in favor of Engel and Schuchland.

For those who would consider moving for, or ordering, a directed verdict in cases where fact issues appear, we suggest that they consider the remarks of the late Mr. Justice Streissguth in the case of Nees v. Minneapolis St. Ry. Co. wherein he said (218 Minn. 542, 16 N. W. [2d] 764) :

"This court has repeatedly and consistently laid emphasis upon the leading role which the jury plays in the drama of an ordinary negligence trial. In that drama the trial judge is merely a director. Throughout the years which have passed since the jury system was engrafted as an indispensable part of the American system of jurisprudence, such concept has remained unchanged. And though, in that system, courts of last resort have been endowed with the power—through pronouncement and development of procedural law—to restrict and limit the functions of juries and thereby augment their own, they have steadfastly declined to do so, with the result that the jury's exclusive control of fact questions in law actions is declared with as much emphasis today as at any time in our judicial history."

■ Defendants contend that the orders dismissing the action as to Griffin and directing the verdict in favor of Engel and Schuchland are not reviewable in this court. This brings up for consideration principally M. S. A. 547.03, subd. 2.

As the statute requiring the taking of exceptions was originally enacted during the early history of this state it required that, in order to obtain a review of the rulings and instructions of the court, an exception be taken upon the trial to adverse rulings and to instructions which were claimed to be erroneous. The purpose of this procedure was to inform opposing counsel and the trial court of the intention of the party making the objections to rely thereon for the purpose of review, and this court refused to consider any ruling or objection to the charge of the court unless followed by an exception duly entered. Subsequently, the statute was amended so

as to permit either that an exception be noted at the time of the trial or that the alleged error be clearly specified in the notice of motion for a new trial.[9] Under that amendment, in order to obtain a review in this court, it was necessary either to note an exception upon the trial or to specify the alleged error in the notice of motion for a new trial.

As all trial lawyers know this resulted in a practice that was not only at times embarrassing but often burdensome. In a case where complicated legal principles were involved requiring numerous objections, a lawyer was confronted with the necessity of either excepting to each adverse ruling in the presence of the jury, which procedure was frequently misunderstood by the jury as criticism of the court by counsel, or foregoing the taking of exceptions, in which event he frequently was required to spend much useless time and effort, after the verdict, in preparing a cumbersome notice of motion for a new trial specifying the alleged errors to which no exception had been taken upon the trial.

By L. 1945, c. 282 (M. S. A. 547.03), the legislature changed this practice by adding the following amendment to the statute:

"Subdivision 2. In the trial of any civil or criminal case any adverse ruling, order, decision or instruction of the court on a matter of law shall be deemed excepted to for all purposes of this chapter."

By this amendment the necessity of counsel noting an exception upon the trial to an adverse ruling, order, decision, or instruction on a matter of law was obviated, the exception being automatically taken and noted by the statute itself.

Here plaintiff's motion for a new trial under M. S. A. 547.01 was based in part upon "Errors of law occurring at the trial." This properly brings up for review the orders of the court dismissing the action as to Griffin and directing the verdict in favor of Engel and Schuchland without the necessity of plaintiff's having noted an exception at the time of the trial or without more particularly specify-

---

[9]Stewart v. Davenport, 23 Minn. 346; Grant v. Wagner, 87 Minn. 297, 91 N. W. 1125; Cappis v. Wiedemann, 86 Minn. 156, 90 N. W. 368; 5 Dunnell, Dig. & Supp. § 7091.

ing the alleged errors in the notice of motion for a new trial, since these orders were obviously deliberately and intentionally made. Section 547.03, subd. 2, "was not intended to obviate the necessity of seasonably calling the court's attention to inadvertent omissions or errors in the charge, but merely to eliminate the need for taking an exception where the court has acted adversely after its attention has been directed to the alleged error."[10]

The defendants cite the case of Anderson v. Sears, Roebuck & Co. 223 Minn. 1, 26 N. W. (2d) 355, in support of their claim that the order dismissing the action as to Griffin and the instruction directing the verdict in favor of Engel and Schuchland are not reviewable here. That case discussed and considered § 547.03, subd. 1. It did not consider nor discuss subd. 2 of the statute.[11] Insofar as that case, by implication or otherwise, may be construed to be contrary to the holding herein, and also insofar as such decision conflicts with the case of Storey v. Weinberg, *supra,* it is expressly overruled.

Of course, § 547.03, as to district court practice, has been superseded by Rules 46 and 51 of Rules of Civil Procedure; and since January 1, 1954, the effective date of the municipal court rules, the municipal court practice has been superseded by similar rules of like number.

■ Plaintiff contends that the defendants Griffin and Engel were called for cross-examination under § 595.03. This, however, does not appear from the record, and defendant Griffin asserts that both defendants, therefore, became witnesses of the plaintiff and that plaintiff was bound by their testimony. Even if it were conceded that the defendants were not called for cross-examination under the statute,

---

[10]Storey v. Weinberg, 226 Minn. 48, 52, 31 N. W. (2d) 912, 915. See, Foster v. Bock, 229 Minn. 428, 39 N. W. (2d) 862; Froden v. Ranzenberger, 230 Minn. 366, 373, 41 N. W. (2d) 807, 811; Mickelson v. Kernkamp, 230 Minn. 448, 456, 42 N. W. (2d) 18, 23; MacIllravie v. St. Barnabas Hospital, 231 Minn. 384, 389, 43 N. W. (2d) 221, 224; Chapman v. Dorsey, 235 Minn. 25, 30, 49 N. W. (2d) 4, 7; LaCombe v. Minneapolis St. Ry. Co. 236 Minn. 86, 92, 51 N. W. (2d) 839, 844.

[11]See, 31 Minn. L. Rev. 736 and 32 Minn. L. Rev. 375.

plaintiff would not be precluded from offering testimony which contradicted that given by the defendants.[12] Moreover, an examination of their testimony shows that the accounts given by them of the accident are inconsistent and presented fact questions for the jury.

While the facts in the case of Selover v. Bryant, 54 Minn. 434, 56 N. W. 58, are not similar to the facts here, the language used in the opinion is appropriate. There surprise testimony was given by one witness which was later contradicted by another witness for the same party. This court made these observations.[13]

It should be pointed out here that, where a party calls a witness for cross-examination under the statute, the record must be made to show clearly that he was so called. In the absence of such showing the testimony of such witness is to be considered as evidence in the case in the same manner and to the same extent as that of other witnesses.

Reversed and new trial granted.

[12] In re Hurley (D. Minn.) 204 F. 126; State v. Wassing, 141 Minn. 106, 169 N. W. 485; Keough v. St. Paul Milk Co. 205 Minn. 96, 285 N. W. 809; 6 Dunnell, Dig. & Supp. § 10356.

[13] "* * * One has not all the world from which to choose the witnesses by whose testimony he must prove his case. He has not the freedom of choice that one has in the selection of an agent. He can only call those who are supposed to know the facts in issue. He is entitled to have their testimony placed before the jury, not as the statements of his agents or representatives by which he is to be concluded, but as the testimony of witnesses whose credibility he cannot be expected to vouch for, but which the jury are to determine. It is everywhere admitted that a party whose witness testifies against him is not concluded thereby. He may prove the fact to be contrary to such testimony, although that does discredit a witness whom he has called." (54 Minn. 438, 56 N. W. 59.)