**Gerald J. CLEMAS, et al., Appellants,**

**v.**

**NORTHERN STATES ENTERPRISES, INC., d.b.a. Nino's Steak Roundup, Respondent,**

**GPR & ERA, d.b.a. Blacksmith Lounge, Respondent,**

**North River Insurance Company, Defendant.**

**No. CX–84–1312.**

Court of Appeals of Minnesota.

Jan. 22, 1985.

Review Denied April 18, 1985.

Jeffrey M. Smith, McCullough, Dyrud & Smith, Saint Paul, for appellants.

Robert E. Salmon, Meagher, Geer, Markham, Anderson, Adamson, Brennan & Flaskamp, Minneapolis, for Northern States Enterprises, Inc.

Michael P. McDonough, Michael R. Quinlivan, McDonough, Geck & Cornan, Minneapolis, for GPR & ERA.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and LANSING, JJ.

## OPINION

LESLIE, Judge.

Plaintiff Helen Clemas has brought this action under the Civil Damages Act, Minn. Stat. § 340.95 (1980), against Nino's Steak Roundup and Blacksmith Lounge which allegedly served her husband, Gerald Clemas, alcohol when he was obviously intoxicated. She claims that her husband's car accident, allegedly resulting from his state of intoxication, caused a loss to her of companionship, vacation time and means of support, and an increase in yard work. Both defendants moved for summary judgment and, by an order filed January 6, 1984, the trial court granted the summary judgment motions of both defendants. From this judgment plaintiff appeals.

## FACTS

On August 6, 1981, Gerald Clemas was a patron in two liquor establishments, Nino's Steak Roundup and Blacksmith Lounge.

Mr. Clemas became intoxicated and while driving home went off the road and into a ditch. As a result of this accident, he sustained broken ribs, a punctured lung, damage to his spleen, and loss of blood. During surgery his spleen was completely removed. He was hospitalized from August 7, 1981 to August 17, 1981.

Gerald Clemas was a one-half owner in Mid-America Metal Craft. Allegedly due to the accident, he was forced to sell his interest in the business, since he had become physically incapable of performing the tasks of the job. An affidavit of Gerald Clemas stated that due to the accident his salary was reduced by $150.00 per week in 1982 and also that the growth rate of his business was reduced. He stated that due to his injury he had to sell his business, that his wife had to assume more duties around the house, and that he could not do many farm chores which he had done previously. Finally, he stated that the injury has resulted in a limitation of the family's recreational activities, including vacations.

Helen Clemas is allegedly dependent on her husband's support even though she was employed at the time of his accident and continues to be employed.

By affidavit, Helen Clemas testified that her husband sold the business due to the accident. She stated that she suffered a present total loss of means of support due to her husband's unemployment. She also stated that due to the accident she has been forced to spend numerous hours of her own time doing his work and also to expend $400.00 for the purchase of wood to burn in the family wood furnace.

Depositions of both Helen and Gerald Clemas do not allege any post-accident reduction of their financial standard of living. Based on those depositions the trial court found that Gerald Clemas had sustained no loss of salary as a result of the accident, and that Helen Clemas' financial standard of living was therefore in no way decreased. The court thus granted a general summary judgment motion.

## ISSUES

1. Are plaintiff's claims for loss of companionship, loss of vacation time, and increased yard work within the scope of the Civil Damages Act?

2. Can plaintiff recover damages based on the fact that her husband has a 25% chance of dying as a result of his injuries?

3. Does a genuine issue of material fact exist as to whether plaintiff suffered injuries due to her husband's sale of his business and decrease in salary, allegedly due to the injury?

## ANALYSIS

### I.

The Civil Damages Act of 1980, which is applicable in this case, provides as follows:

> Every * * * wife * * * who is injured in *person* or *property*, or *means of support* * * * by the intoxication of any person, has a right of action, in his own name, against any person who, by illegally selling or bartering intoxicating liquors, caused the intoxication of such person, for all damages, sustained * * *.

Minn.Stat. § 340.95 (1980) (emphasis supplied). Defendants correctly point out that courts are reluctant to enlarge the Civil Damages Act by construing the terms beyond their clear and explicit meaning. *Fitzer v. Bloom*, 253 N.W.2d 395, 402 (Minn. 1977). Thus, Helen Clemas' claims for loss of companionship, vacation time, and increased yard work are beyond the scope of the statute.

### II.

Helen Clemas also seeks to recover for the loss of support she will suffer should her husband die from a spleen infection. Gerald Clemas' deposition states that he has a 50% chance of developing a spleen infection, and a 50% chance of dying from that infection. Thus Gerald Clemas has a 25% chance of dying from the infection. Helen has therefore demanded damages in an amount equal to 25% of her husband's future income.

Minnesota law does not permit such a recovery. Where the record does not presently establish a loss of means of support, the claim will be rejected. *Herbes v. Village of Holdingford,* 267 Minn. at 84, 125 N.W.2d at 432. *See Bundy v. City of Fridley,* 265 Minn. 549, 552–53, 122 N.W.2d 585, 588–89 (1963) (limiting construction of the phrase "means of support" to its natural and ordinary meaning). Damages which are uncertain, conjectural or speculative may not be recovered. *Carpenter v. Nelson,* 257 Minn. 424, 428, 101 N.W.2d 918, 921 (1960); *Landeen v. DeJung,* 219 Minn. 287, 293, 17 N.W.2d 648, 652 (1945).

This rule is particularly appropriate in the present situation. If after receiving 25% of his income Helen's husband were to die, she would be deprived of 75% of the recovery to which she would be entitled. On the other hand, if her husband did not die, Helen would have received a windfall of 25% of his future income. Whatever Gerald Clemas' fate, if Helen were to receive 25% of his future income as damages, an inequitable result would occur.

## III.

Although Helen Clemas cannot recover for speculative future losses, loss of companionship, vacation time, or increased yard work under the Civil Damages Act, she has also claimed a present loss of means of support due to her husband's injury. Helen claims that she has been deprived of her husband's salary since the sale of the business and that prior to the sale she was deprived of $150.00 a week which was a paycut her husband had to take due to the injury. Both of these claims allege damages as a result of loss of means of support under the Civil Damages Act.

Defendants argue and the trial court found that the Clemases' depositions overwhelmingly oppose such claims. In his deposition Gerald Clemas was asked the question:

"As a result of that accident did you suffer a loss of any payroll checks from the business in which you were employed?"

He responded:

"I don't believe so."

When asked whether or not his salary has remained constant he responded that it had, with the exception that the corporation would have done a little better had he been there. He finally stated that his salary was fixed by the corporation and has remained constant.

In her deposition Helen Clemas testified consistently with the testimony of her husband. She also testified that her financial standard of living has remained the same. Defendants further point out that in her answers to interrogatories Helen Clemas listed only her husband's twenty-five percent mortality rate as injuries suffered by her. Based on this pretrial discovery, defendants argue that Helen Clemas' standard of living has remained unchanged to this date and that her sole factual claim is that the increased risk of death to her husband constitutes a present loss to her.

Minnesota Rule of Civil Procedure 56.03 states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, *together with the affidavits,* if any, show that there is no genuine issue as to any material fact." Minn.R. Civ.P. 56.03 (emphasis supplied). In interpreting this rule the Minnesota Supreme Court has held that the nonmoving party has the benefit of the view of evidence most favorable to him. *Vieths v. Thorp Finance Co.,* 305 Minn. 522, 525, 232 N.W.2d 776, 778 (1975). All doubts and factual inferences must be resolved against the moving party. *Nord v. Herreid,* 305 N.W.2d 337, 339 (Minn.1981). The motion should be denied "if under the evidence reasonable men might reach different conclusions." *Anderson v. Twin City Rapid Transit Co.,* 250 Minn. 167, 186, 84 N.W.2d 593, 605 (1957).

In his affidavit Gerald Clemas stated that his $150.00 per week salary reduction of 1982 was a result of his decreased

effectiveness due to the injury. The deposition does not explicitly refute this, but notes that the corporation would have been better off financially had it not been for the accident. Taken in the light most favorable to the appellants, it is clear that a genuine issue of material fact exists regarding Helen Clemas' loss of means of support.

In his affidavit Gerald Clemas further testified that his injury forced him to sell his business, thus depriving him and his wife of his monthly salary and the growth of his business. Nothing in the depositions contradicts this. Also, the affidavit of Helen Clemas confirms that the business was sold due to her husband's injuries. Again, while a jury could find otherwise, a question regarding the sale of Gerald Clemas' business exists and thus precludes summary judgment.

## DECISION

The trial court properly granted summary judgment on the issues of Helen Clemas' claim for nonmonetary losses and those losses which might result if Gerald Clemas were to die from his injuries, as such damages are not recoverable under the Civil Damages Act. However, taking all the evidence in a light most favorable to the nonmoving party, factual issues do exist as to actual monetary losses sustained by Helen Clemas due to the sale of her husband's business and a $150 per week pay cut taken by him prior to the sale. Thus as to these issues summary judgment was improper.

Affirmed in part and reversed and remanded in part.