**Robert G. DIMKE, et al., Appellants,**

**v.**

**Naomi FARR, et al., Respondents,**

**Jon Muir, Respondent.**

No. A11–329.

Court of Appeals of Minnesota.

Sept. 12, 2011.

Eric J. Nystrom, Meghan M. Elliott, Lindquist & Vennum, P.L.L.P., Minneapolis, MN, for appellants.

John M. Koneck, Peter J. Diessner, Fredrikson & Byron, P.A., Minneapolis, MN, for respondents Farr, et al.

Robert H. Wenner, Reichert Wenner, P.A., St. Cloud, MN, for respondent Muir.

Considered and decided by LARKIN, Presiding Judge; SHUMAKER, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

In this contract dispute involving the sale of residential real property, appellant-buyers challenge the district court's summary judgment in favor of respondent-sellers. Appellant-buyers argue that the district court erred by (1) failing to analyze whether respondent-sellers' notice of declaratory cancellation was effective and (2) failing to exercise its equitable powers to enjoin respondent-sellers' cancellation of the purchase agreement. We reverse and remand.

## FACTS

On April 7, 2010, respondent Jon Muir entered into a purchase agreement (Muir purchase agreement) to purchase a parcel of residential land (property) from respondents Naomi and Darrel Farr for $1,575,000. The Muir purchase agreement provided that, if the sale failed to close on or by June 11, 2010, the purchase agreement would be cancelled. On April 22, 2010, Muir sought to cancel the Muir purchase agreement, but the Farrs declined. The sale to Muir did not close on or by June 11, 2010. On June 27, the Farrs retained a listing agent to market the property. The Farrs disclosed to the listing agent that the property had been subject to the Muir purchase agreement and that Muir had attempted to cancel that agreement. The listing agent showed the property to appellants Robert and Mary Dimke in late July or early August 2010 and advised the Dimkes that the Muir purchase agreement would be cancelled

when the Dimkes signed an agreement to purchase the property.

On August 8, 2010, the Dimkes entered an agreement (Dimke purchase agreement) to purchase the property from the Farrs for $1,000,000, with a closing date of September 10, 2010. The Dimke purchase agreement requires the Farrs to use their "best efforts to provide marketable title by the date of closing" and provides that, if the Farrs cannot provide marketable title through their best efforts within 30 days after the closing date, either party has the right to cancel the Dimke purchase agreement by written notice to the other party.

On September 9, Muir notified the Farrs that he intended to close on the property at the price established in the Muir purchase agreement, $1,575,000. The listing agent told the Dimkes that the closing was cancelled because the Farrs lacked clear title to the property. The Dimkes responded that, under the terms of the Dimke purchase agreement, the Farrs' deadline to present marketable title to the property was October 12, 2010.

On October 13, the Farrs executed and delivered to the Dimkes a notice of cancellation because, they asserted, they could not provide the Dimkes with marketable title to the property. The Dimkes refused to accept the cancellation of the Dimke purchase agreement. On October 20, the Farrs served a notice of declaratory cancellation on the Dimkes pursuant to Minn. Stat. § 559.217, subd. 4.

The Dimkes did not obtain a court order suspending the cancellation within the 15–day cancellation-suspension period of section 559.217, subdivision 4(c). Rather, on October 25, 2010, the Dimkes sued the Farrs, seeking specific performance and damages for breach of contract and breach of the implied covenant of good faith and fair dealing. They also sued Muir, alleging tortious interference with a contract.

The Dimkes, the Farrs, and Muir each moved for summary judgment on November 22, 2010. The district court granted summary judgment in favor of the Farrs and Muir on the ground that the Dimke purchase agreement was void by operation of section 559.217, subdivision 4(c), at the expiration of the 15–day cancellation-suspension period. This appeal followed.

## ISSUE

Did the district court err by granting summary judgment in favor of respondents?

## ANALYSIS

We review the district court's decision to grant summary judgment to determine whether there are any genuine issues of material fact and whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). In doing so, we view the evidence in the light most favorable to the party against whom summary judgment was granted. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). Summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that either party is entitled to a judgment as a matter of law." Minn. R. Civ. P. 56.03.

■ The Dimkes challenge the district court's interpretation of the declaratory cancellation provisions of Minn.Stat. § 559.217, subd. 4. Specifically, they assert that section 559.217, subdivision 4, is inapplicable because the requisite condition precedent did not exist to effectuate cancellation of the purchase agreement. This argument presents an issue of statutory construction, which we review de novo.

*Swenson v. Holsten,* 783 N.W.2d 580, 583 (Minn.App.2010). Our goals in all statutory construction are to "ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2010). In doing so, we first determine whether the statute's language, on its face, is ambiguous. *Am. Tower, L.P. v. City of Grant,* 636 N.W.2d 309, 312 (Minn.2001). A statute's language is ambiguous only when it is subject to more than one reasonable interpretation. *Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999). When the legislature's intent is clearly discernible from a statute's plain and unambiguous language, we interpret the language according to its plain meaning, without resorting to other principles of statutory construction. *State v. Anderson,* 683 N.W.2d 818, 821 (Minn. 2004); *see also* Minn.Stat. § 645.08(1) (2010) (providing that words are construed according to their common usage). We construe a statute as a whole while attempting to harmonize apparent conflicts and give effect to all of its component parts. *Langston v. Wilson McShane Corp.,* 776 N.W.2d 684, 688 (Minn.2009).

Section 559.217, subdivision 4(a), provides that

> [i]f an unfulfilled condition exists after the date specified for fulfillment in the terms of a purchase agreement for the conveyance of residential real property, which by the terms of the purchase agreement cancels the purchase agreement, either the purchaser or the seller may confirm the cancellation by serving upon the other party to the purchase agreement ... a [cancellation] notice.

Minn.Stat. § 559.217, subd. 4(a). A declaratory cancellation is complete "unless, within 15 days after the service of the notice," the party on whom the cancellation notice was served secures a court order suspending the cancellation. *Id.,* subd. 4(c). This statute's language is plain and unambiguous. The introductory phrase "[i]f an unfulfilled condition exists" expresses a threshold requirement that an unfulfilled condition of the purchase agreement must exist *before* a cancellation notice may be served under section 559.217, subdivision 4. Under the plain language of section 559.217, subdivision 4, if a threshold unfulfilled condition does not exist, then a purported cancellation notice is ineffective to confirm a cancellation of the contract and the remedy for a party seeking enforcement of a purchase agreement is not limited by the statutory 15–day period for securing a suspension of the cancellation.

■ The Farrs contend that summary judgment was properly granted because, even if an unfulfilled condition is a threshold requirement of section 559.217, subdivision 4, the Dimkes' refusal to accept the October 13, 2010 cancellation notice constitutes an unfulfilled condition. The Farrs' argument is based on a provision in the Dimke purchase agreement stating that, if the seller cannot by best efforts provide marketable title, either party may declare the purchase agreement cancelled and the non-cancelling party "shall immediately sign a *Cancellation of Purchase Agreement* confirming said cancellation." The Dimkes counter that there is a genuine issue of material fact in dispute as to whether they were obligated to accept the October 13, 2010 cancellation notice. If they were not, they argue, there was no "unfulfilled condition" and the Farrs' notice of declaratory cancellation was ineffective. The district court did not determine whether an unfulfilled condition existed; rather, it concluded that the Dimke purchase agreement was void because the Dimkes did not seek a timely suspension of the Farrs' cancellation as required by section 559.217, subdivision 4.

■ We construe statutory language so as not to yield an absurd result. *Brookfield Trade Ctr., Inc. v. Ramsey Cnty.*, 584 N.W.2d 390, 394 (Minn.1998). By providing that serving the cancellation notice "confirm[s] the cancellation," section 559.217, subdivision 4, implies that the cancellation of a purchase agreement is a separate and independent occurrence that precedes service of a cancellation notice. A cancellation notice cannot "confirm" an event that has not occurred. Thus, an application of the Farrs' interpretation of section 559.217, subdivision 4, would lead to an absurd result.

■ Minnesota courts have not addressed whether an unfulfilled condition is a threshold requirement for a notice of declaratory cancellation or whether the effectiveness of such notice may be challenged in a manner other than obtaining a court-ordered suspension of the cancellation within a 15–day period, as required by section 559.217, subdivision 4. But Minnesota courts have addressed the notice of cancellation in the context of a contract for deed, currently governed by Minn.Stat. § 559.21 (2010), which similarly provides for the cancellation of a contract for the conveyance of real estate "[i]f a default occurs in the conditions of a contract." Three cases inform our analysis of whether an "unfulfilled condition" is required to effectively invoke the declaratory cancellation of the purchase agreement under Minn.Stat. § 559.217, subd. 4.

In *Mattson v. Greifendorf,* the buyer purchased real property on a contract for deed in which the buyer agreed to pay monthly installments plus property taxes during the installment period. 183 Minn. 580, 581, 237 N.W. 588, 588 (1931). A tax payment was made approximately two months late because of a clerical error that was not the buyer's fault, and the seller served on the buyer a notice of cancellation of the contract for deed. *Id.* at 582, 237 N.W. at 588. The Minnesota Supreme Court held that, "[i]f there was no default, or if the trifling default here in question occurred under such circumstances that [the buyer was] not to blame therefor, then there was no ground for canceling the contract." *Id.* at 583, 237 N.W. at 589.

The sellers in *Vieths v. Thorp Fin. Co.* served a notice of cancellation on the prospective buyers of real estate because the buyers defaulted on the purchase payment. 305 Minn. 522, 524, 232 N.W.2d 776, 777–78 (1975). The buyers claimed that the sellers had agreed to an extension for payment of the purchase amount but served the notice of cancellation before that extension period expired. *Id.* The Minnesota Supreme Court concluded that there existed a genuine issue of material fact as to whether the sellers' actions prevented the buyers from curing the default. *Id.* at 524, 232 N.W.2d at 778. In reaching its conclusion, the *Vieths* court observed: "Of course, a notice of cancellation of an agreement to purchase real estate *which is served prior to actual default is ineffective.*" *Id.* (emphasis added) (citing *Mattson,* 183 Minn. at 583, 237 N.W. at 589).

In *Coddon v. Youngkrantz,* the seller, pursuant to Minn.Stat. § 559.21, served a notice of cancellation of a contract for deed on a prospective buyer of real estate based on one late installment payment. 562 N.W.2d 39, 41 (Minn.App.1997), *review denied* (Minn. July 10, 1997). The district court entered judgment in favor of the seller and cancelled the contract for deed. *Id.* at 42. Although the buyer failed to seek relief prior to the expiration of the 60–day cancellation period under section 559.21, we reversed the district court's decision. *Id.* at 43–44. We concluded that the delay of a single installment payment was not a default and that the seller's attempted statutory cancellation was inef-

fective because a default had not occurred. *Id.* at 43. The rules articulated in *Mattson*, *Vieths*, and *Coddon* are consistent with our construction of section 559.217, subdivision 4, as establishing an "unfulfilled condition" as a threshold requirement to invoke declaratory cancellation of a purchase agreement.

■ The Farrs argue, and the district court reasoned, that the purpose of section 559.217, subdivision 4, is to provide stability in the real estate market by extinguishing claims unless immediate action is taken. But when the statutory language is "clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16; *accord Kirkwold Constr. Co. v. M.G.A. Constr., Inc.,* 513 N.W.2d 241, 244 (Minn.1994). We observe that, if the legislature intended to impose an expedited process in every case, the current statutory language does not effectuate that intent. *Cf. Coddon,* 562 N.W.2d at 44 (holding that statute authorizing cancellation of a contract for deed does not exclude equitable relief because "strict application of statutory cancellation could be unjust" and "a full hearing on the merits in open court subject to appellate review would be preempted by summary, nonjudicial cancellation enforced by the [seller]" (quotation omitted)). Moreover, the Dimkes took immediate action in the instant case—although not in the manner required by section 559.217, subdivision 4(c)—by initiating a breach-of-contract action five days after the Farrs served their notice of declaratory cancellation.

■ The district court erred by granting summary judgment to the Farrs and Muir without first determining whether the Farrs' notice of declaratory cancellation was effective. Accordingly, we reverse the district court's judgment and remand for the district court to reinstate the Dimke purchase agreement and determine whether the Farrs' attempted declaratory cancellation was effective.[1] The district court may, in its discretion, reopen the record on remand.

### DECISION

An unfulfilled condition of a purchase agreement is the threshold requirement that permits a buyer or seller to invoke declaratory cancellation of the purchase agreement under Minn.Stat. § 559.217, subd. 4. Because the district court erred by granting summary judgment to the Farrs and Muir without first determining whether the Farrs' notice of declaratory cancellation was effective, we reverse and remand to the district court for reinstatement of the Dimke purchase agreement and determination of whether an unfulfilled condition of the purchase agreement existed such that the Farrs' declaratory cancellation under Minn.Stat. § 559.217, subd. 4, was effective.

**Reversed and remanded.**

---

1. In light of our resolution of this issue, we need not address whether the district court erred by failing to exercise its equitable jurisdiction.